Joseph A. Nikiel v. Commissioner.
Nikiel v. Commissioner
Docket No. 4775-67.
United States Tax Court
T.C. Memo 1970-259; 1970 Tax Ct. Memo LEXIS 101; 29 T.C.M. (CCH) 1145; T.C.M. (RIA) 70259; September 9, 1970, Filed *101 Joseph A. Nikiel, pro se, 429 S. Ogden St., Buffalo, N. Y. Leon M. Kerry, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner determined deficiencies in and additions to petitioner's income taxes for the taxable years and in the amounts as follows: Year
Deficiency
Addition to taxsection 6653(a) [1]
1964
$ 840.21
$42.01
1965
1,151.80
57.59 The issues to be decided are: (1) whether petitioner is taxable on rental income received in 1964 and 1965 from real property he had leased during those years, and if so (2) whether petitioner is liable for the additions to the taxes provided for in section 6653(a) for the years 1964 and 1965. [2]
Findings of Fact The stipulated facts are accordingly found *102 as fact. Petitioner Joseph A. Nikiel resided at Buffalo, New York, at the time of filing his petition. He filed his income tax returns for the calendar years 1964 and 1965 with the district director of internal revenue at Buffalo, New York. On December 31, 1962, petitioner purchased certain unimproved real property located at 330 Myrtle Avenue, Buffalo, New York, from the F. N. Bart Co., Inc., for the sum of $5,000. At the time of purchase, the property was under lease to the Great Atlantic and Pacific Tea Company, Inc., as a parking lot for its employees. During 1964 and 1965, petitioner continued to lease the property to A & P as a parking lot on a month-to-month basis for $300 per month. A & P paid the rent by issuing checks payable to petitioner. During each of the years in issue, gross rentals of $3,600 were received from A & P and real property taxes were paid in the amounts of $421.50 and $418.89 for the years 1964 and 1965, respectively. Petitioner and his brother John signed the following handwritten document, purportedly as a lease of the property in issue: I Joseph Nikiel lease the parcel on Myrtle Str. between Spring and Hamburgh Str. to John Nikiel for a period *103 of 4 years with the rights to renew under the condition, that John Nikiel pays all real Estate taxes and other expenses connected with the parcel and takes good care of the parking lot. All rents collected from the parking lot are assigned to John Nikiel. This lease may be transfer only with my approval. [sic] /s/ Joseph Nikiel /s/ John J. Nikiel The alleged lease has never been recorded nor has A & P been notified of its existence. The record contains no evidence that John or petitioner paid for any maintenance for the parking lot during 1964 or 1965. Payments of $220.92, $49.34, and $137.65 were made for maintaining the parking lot in 1966, 1967, and 1968, respectively. 1146 John was employed on a full-time basis by the City of Buffalo during 1964 and 1965. For 1964, John filed an income tax return which reflected a net loss even after including the rental income at issue herein and after including $20,000 allegedly received from his brother Francis. [3] Petitioner and his two brothers lived at the same address during the years in issue. *104 Opinion The primary issue presented herein is whether petitioner is taxable on rental income received in 1964 and 1965 from real property he had leased during those years. This case presents an intra-family transaction between two brothers in what appears to be an attempt by petitioner to shift a portion of his income to his brother John. As we have stated previously, such an intra-family transaction is subject to special scrutiny in order to determine if it is in economic reality what it appears to be on its face. See e.g. . Petitioner relies solely upon the purported lease executed between himself and John. However, the "lease" was never recorded nor was A & P ever notified of its existence. A & P continued to make the rent checks payable to petitioner during the years in issue. Under these facts, we find there was no bona fide intention on the part of petitioner to lease the property to John, but merely an anticipatory assignment of the rental to be derived from the property, and that for an inadequate consideration. We fail to see how petitioner could have had other than donative intentions in making such an agreement. *105 Under the alleged lease, petitioner relinquished annual rental income of $3,600 per year in exchange for his brother's promise to pay real estate taxes and maintenance expenses thereon. The real estate taxes for 1964 and 1965 were $421.50 and $418.89, respectively. Petitioner adduced no proof whatsoever of any maintenance expenses incurred in 1964 and 1965, but did introduce evidence showing maintenance expenses for 1966, 1967, and 1968 in the respective amounts of $220.92, $49.34, and $137.65. Clearly then, John's duties under the alleged lease were grossly inadequate consideration for petitioner's assignment of annual rental income of $3,600. Petitioner may not transfer the taxability of the annual rental income to his brother by his anticipatory assignment thereof. , . We hold for the respondent on this issue. With respect to the additions to tax under section 6653(a), petitioner has the burden of proving that respondent's imposition of the additions to tax was erroneous. . Since petitioner has presented no evidence rebutting *106 respondent's assertion of negligence, we must hold that respondent's imposition of the additions was not erroneous. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioner concedes that he received interest income of $426.27 in 1965 which he failed to report that year. Respondent agrees that the above figure is the correct amount, although in his notice of deficiency, respondent had initially determined petitioner had unreported interest income of $1,393.15 for 1965.↩
3. The Court recently rejected petitioner's brother Francls' claimed $20,000 deduction for an alleged lease cancellation payment made to petitioner's brother John. There was no evidence to support the existence of a lease agreement or the fact that it was lost. It also appeared that Francis was attempting to shift $20,000 of income to John whose losses that year were more than adequate to offset the additional "income." .↩